FILED
2008 Apr-21  PM 01:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| Hazel Hunt, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 07-G-0821-M |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiff, Hazel Hunt, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." <u>Bloodsworth</u>, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." <u>Bloodsworth</u>, at 1239.

**STATUTORY AND REGULATORY FRAMEWORK**

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f).  The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;

(2)     whether she has a severe impairment;

(3)     whether her impairment meets or equals one listed by the Secretary;

(4)     whether the claimant can perform her past work; and

2

(5)     whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord  McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986).  "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."  Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Sally C. Reason, determined the plaintiff met the first two tests, but concluded  did not suffer from a listed impairment.  The ALJ found the plaintiff was able to perform her past relevant work, and accordingly found her not disabled.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the <u>Hand</u> standard require objective
> medical evidence of a condition that could reasonably be expected to cause
> the pain alleged, <u>neither requires objective proof of the pain itself</u>.  Thus
> under both the regulations and the first (objectively identifiable condition)
> and third (reasonably expected to cause pain alleged) parts of the <u>Hand</u>
> standard <u>a claimant who can show that his condition could reasonably be</u>
> <u>expected to give rise to the pain he alleges has established a claim of</u>
> <u>disability and is not required to produce additional, objective proof of the</u>
> <u>pain itself</u>.  <u>See</u> 20 CFR §§ 404.1529 and 416.929;  <u>Hale</u> at 1011.

<u>Elam v. Railroad Retirement Bd.</u>, 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical

information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a]

claimant's subjective testimony supported by medical evidence that satisfies the pain

standard is itself sufficient to support a finding of disability."  <u>Foote</u> at 1561.  Therefore,

if a claimant testifies to disabling pain and satisfies the three part pain standard, he must

be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must

articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons
> for refusing to credit a claimant's subjective pain testimony, then the
> Secretary, as a matter of law, has accepted that testimony as true.  Implicit
> in this rule is the requirement that such articulation of reasons by the
> Secretary be supported by substantial evidence.

<u>Hale v. Bowen</u>, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails

to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons

are not supported by substantial evidence, the pain testimony of the plaintiff must be

accepted as true.

4

## THE STANDARD FOR REJECTING THE TESTIMONY OF A
## TREATING PHYSICIAN

As the Sixth Circuit has noted:  "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988).  "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991).  In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...."  McGregor, 786 F.2d at 1053.  If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## DISCUSSION

In the present case the plaintiff alleges she is disabled due to back, hip and leg pain.  She alleges she became disabled on February 13, 2004.

The medical records show that in October 2002 the plaintiff complained of weakness in her legs and numbness in her right arm. [R 106]  She also reported pain in her legs with changes in the weather.  She was diagnosed with low back pain and restless leg syndrome.  On February 13, 2003, the plaintiff had a lumbar MRI scan, which showed mild disc degeneration with central disc encroachment into the spinal canal at L1-2, L2-3, and L3-4.  [R 147]  At L5-S1 the scan revealed "disc narrowing with abnormal signal and mild broad disc encroachment into the spinal canal."  [R 147]  On the same date an MRI scan of the cervical spine showed "mild findings of disc degeneration with mild broad disc encroachment into the spinal canal at C3-4 and C4-5.  There is mild spondylosis at C5-6 with mild broad disc and osteophyte encroachment into the spinal canal at [that] level." [R 146]

On March 21, 2003, the plaintiff complained of right foot pain and swelling.  [R 94]  On exam she was found to have neck pain and right foot pain.  The diagnoses were foot pain and chronic neck pain.  She was referred to an orthopod for evaluation of her neck and a bone density scan was ordered.  On March 27, 2003, Dr. Slappey examined the plaintiff and found that rotation to the left caused right shoulder pain.  [R 108]  Dr. Slappey reviewed x-ray scans of the cervical and lumbar spine, which showed some mild degenerative changes.  [R 108]  She was sent for physical therapy.

On November 13, 2003, the plaintiff was seen by a neurosurgeon, Dr. George.  [R 111]  Dr. George found the plaintiff could heel/toe walk "gingerly"without

evidence of weakness.  SLR testing was negative.[1]  Faber's test was "positive for right

lateral hip area pain and for reproduction of some of her symptoms."[2]  Dr. George's

diagnostic impression was "Multiple diffuse pain."  [R 111]  He planned to review her

MRI studies, and suggested she might require another visit to Dr. Slappey.  On November

18, 2003, Dr. George noted the plaintiff "has pain in her right hip area and is certain that

irritation of her hip reproduces her primary symptom."  [R 110]  He noted that her MRI of

the neck "is quite normal."  However, her lumbar MRI study showed "degeneration of the

L5-S1 disc space without any extrusion or nerve root compression."  [R 110]  Dr. George

referred her for an orthopedic evaluation.

        On November 24, 2003, Dr. Mussell, of Alabama Orthopedic and Spine,

found the plaintiff tender to lumbar palpation.  [R 120]  Dr. Mussell found the lumbar x-

rays brought by the plaintiff showed "no acute changes in the lumbar region."  The

lumbar MRI from March 2003, however, showed degenerative disc disease "with small

bulging protrusion at L5-S1...."  [R 120]  Dr. Mussell recommended an MRI of the

lumbar spine and pelvis.  He did not recommend surgery "at this time."  She was

diagnosed with "lower back pain, lumbar degenerative disc [disease] and lumbar

---

[1]  The SLR test is also known as Lasègue's sign:  "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed.  This distinguishes the disorder from disease of the hip joint."  Dorland's Illustrated Medical Dictionary 1525 (28th Edition).

[2]  "FABER stands for Flexion, ABduction, and External Rotation of the hip.  .... Pain in the groin area indicates a problem with the hip and not the spine. ....Pain in the sacroiliac area indicates a problem with the sacroiliac joints." http://medinfo.ufl.edu/year1/bcs/slides/extrem/slide21.html

radiculopathy" and "pain in the hip."  If the MRI scans were okay, Dr. Mussell believed

the plaintiff should have a physiatry evaluation.

On December 9, 2003, Dr. Goodman, also with Alabama Orthopedic and

Spine, saw the plaintiff.  He noted physical therapy had not given the plaintiff any

significant improvement in her symptoms, and it might actually have made them worse.

[R 119]  The plaintiff reported that her pain is worse when walking and is in her low

back, but predominately in her right leg.  She reported that her pain was a ten on a scale

of one-to-ten.  Dr. Goodman found the plaintiff to be in "moderate distress secondary to

pain."  [R 119]  Her gait was antalgic.[3]  Straight leg raising was positive on the right, and

lumbar range of motion was limited.  Dr. Goodman noted the plaintiff's pain was on the

right side "in the right L5 and S1 segmental region."  [R 119]  Dr. Goodman reviewed an

MRI of the lumbar spine dated November 28, 2003, which "demonstrates spondylosis[4] at

L5-S1."  [R 119]  His diagnostic assessment was as follows:

_____

[3] Antalgic is defined as "counteracting or avoiding pain, as a posture or gait assumed so as to lessen pain."  Dorland's Illustrated Medical Dictionary 90 (27th Edition).

[4] Spondylosis is defined as "ankylosis [immobility and consolidation of a joint due to disease, injury, or surgical procedure] of a vertebral joint; also, a general term for degenerative changes due to osteoarthritis."  Dorland's Illustrated Medical Dictionary 1567, 91 (27th Edition).

Lumbar spondylosis is defined as "degenerative joint disease affecting the lumbar vertebrae and intervertebral disks, causing pain and stiffness, sometimes with sciatic [the sciatic nerve, the largest nerve of the body, originates in the lower spine and proceeds into the legs] radiation due to nerve root pressure by associated protruding disks or osteophytes."  Dorland's Illustrated Medical Dictionary 1567, 1121, 1114 (27th Edition).

> 44-year-old female with 8 month history of low back pain and right lower
> extremity pain with MRI dated November 28, 2003, demonstrating
> degenerative disc disease at L5-S1.  Her pain is most likely originating from
> the L5-S1 segmental region, however, [sacroiliac] joint also may be
> included in the physical examination.

[R 118-119]  Dr. Goodman scheduled the plaintiff for a general epidural steroid injection

("ESI") at L5-S1.  [R 118]  This was to be followed up by an intradiscal steroid injection

if she remained symptomatic.

The plaintiff returned to Dr. Goodman on February 6, 2004, reporting

absolutely no relief of pain with the general ESI on December 10, 2003.  [R 117]  The

plaintiff again was found to have an antalgic gait and "did not like to weight bear on the

right side."  [R 117]  SLR was positive for radicular type pain at 80 degrees on the right.

Dr. Goodman reported the plaintiff "had pain and guarding with right hip range of

motion, but not with left hip range of motion."  [R 117]  Pain was found to be

"segmentally in the back at L5-S1."  [R 117]  Dr. Goodman x-rayed her right hip, which

"looked okay."  [R 117]  His diagnostic assessment was as follows:

> Chronic 2 year history of back and right leg pain with degenerative disc
> disease at L5-S1 per MRI November 28, 2003, but negative pelvic MRI.
> She did not get any relief of pain through general epidural L5-S1 on the
> right on December 10, 2003.  Clinically she seems to have radicular type
> pain coming from L5-S1 segment, but I cannot exclude the right SI joint,
> nor can I exclude the right hip as a potential pain generator.  Note she has
> had physical therapy.  She has also been to a chiropractor, Dr. Weber.

[R 117]  Dr. Goodman planned an intradiscal injection at L5-S1.  [R 117]  A bone scan

and x-ray guided hip injection would be considered if symptoms persisted.  Pain

management was also under consideration.  [R 117]

9

On February 27, 2004, Dr. Goodman saw the plaintiff, who reported the epidural on February 13 had not helped at all.  Dr. Goodman noted:  "She did have severe disc degeneration at L5-S1 with epidural leak with that disc injection."  [R 116]  On physical examination the plaintiff had "pain with hip flexion, both with her knee extended and her knee flexed on the right side."  [R 116]  She also had pain with hip range of motion.  Dr. Goodman planned a bone scan, and wished to proceed with an x-ray guided intraarticular right hip injection.  Other surgical options were also to be considered.  [R 116]  Doctor Goodman noted the plaintiff was having difficulty at work due to her leg problems:

> She is having some short-term disability issues.  Her employer is concerned that she may harm herself at work due to the fact that occasionally her leg gives way.  She works at a dry cleaners.  We may need to get an FCE to more objectively create work restrictions.

[R 116]

The bone scan showed "mild increased uptake about the shoulders, hips, and knees compatible with chronic arthritic change."  [R 115]  The findings did not seem more pronounced at the right hip than at the left.  [R 115]

On March 17, 2004, the plaintiff returned to Dr. Goodman, who noted the intraarticular hip injection did not help at all.  [R 113]  Dr. Goodman noted:  "She has severe degenerative disc disease L5-S1.  I am inclined to believe that the L5-S1 disc is her pain generator."  [R 113]  Dr. Goodman's plan was as follows:  "We did discuss pain medicine management.  I would like to get a surgical second opinion first.  She has seen

10

Dr. George before.  She wants to pursue another surgical opinion.  I am going to see her as needed."  [R 113]

The only additional treatment notes are from Dr. Shawn Stubs, R.N., D.C., L.Ac.  [R 128-139]  Chiropractor Stubbs treated the plaintiff on a number of occasions in August 2004.  She also completed certifications for disabled parking privileges on two occasions.

The above medical evidence establishes without a doubt the presence of a condition, severe degenerative disc disease, that could reasonably be expected to produce disabling pain.  See e.g. Hale v. Bowen, 831 F.2d 1007 (11th Cir. 1987)(finding that cervical nerve root compression syndrome, mild lumbar scoliosis and degenerative disc disease satisfy the pain standard); Jenkins v. Sullivan, 906 F.2d 107, 109 (4th Cir. 1990)(finding degenerative disc disease and an ankle injury to be conditions which could reasonably be expected to produce disabling pain).  However, the ALJ did not even mention the Eleventh Circuit pain standard in her decision.  The ALJ focused only on the fact that most of the plaintiff's medical treatment was prior to her alleged onset date: "The medical evidence shows that virtually all of the treatment which the claimant has received was during the period prior to her alleged onset date, when she was still working."  [R 15]  It is noteworthy that the ALJ did not even discuss Dr. Goodman's diagnosis of severe degenerative disc disease on February 27, 2004, and again on March 17, 2004.  Both of these visits to Dr. Goodman were after the plaintiff's alleged onset date.  In addition, the ALJ found the plaintiff had only "mild degenerative disc disease of

the cervical and lumbar spines." [R 15]  This finding totally ignores the finding of severe

degenerative disc disease by Dr. Goodman.  The ALJ also incorrectly stated that "most of

the findings have been negative or of a fairly mild nature." [R 15]  The ALJ failed to

mention the November 2003 MRI, which showed spondylosis at L5-S1.

       The ALJ placed improper and unfounded emphasis on the fact that much of

plaintiff's treatment history was prior to her alleged onset date and did not properly

consider the plaintiff's treatment history in accordance with Social Security Ruling 96-7p,

which provides in pertinent part:

> <u>However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide,</u> or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment. The adjudicator may need to recontact the individual or question the individual at the administrative proceeding in order to determine whether there are good reasons the individual does not seek medical treatment or does not pursue treatment in a consistent manner. The explanations provided by the individual may provide insight into the individual's credibility. For example:
>
> •     The individual's daily activities may be structured so as to minimize symptoms to a tolerable level or eliminate them entirely, avoiding physical or mental stressors that would exacerbate the symptoms. The individual may be living with the symptoms, seeing a medical source only as needed for periodic evaluation and renewal of medications.
>
>     * * * *
>
> •     The individual may be unable to afford treatment and may not have access to free or low-cost medical services.

- The individual may have been advised by a medical source that there is no further, effective treatment that can be prescribed and undertaken that would benefit the individual.

SSR 96-7p (emphasis added).  In particular, the ALJ did not explore whether the plaintiff's symptoms had been alleviated due to a reduction in her activities–namely having stopped working.  Nor did the ALJ consider the highly likely possibility that the plaintiff was no longer able to afford extensive medical treatment because she lost her insurance coverage when she ceased work.[5]  Having failed to comply with the requirements of SSR 96-7p, it was improper for the ALJ to draw the inference that the plaintiff's symptoms were not serious based upon a lack of medical treatment.

Apart from her improper consideration of the plaintiff's medical history, the ALJ's credibility discussion is as follows:

> The claimant has indicated that while her usual daily activities take longer due to pain in her back, neck, shoulders, hips and legs, she is still able to perform dusting, sweeping, mopping, cooking, dishwashing, and grocery shopping (Exhibit 4E).

[R 16-17]  This is woefully inadequate.  In the form cited by the ALJ, the plaintiff, in addition to indicating the activities take longer, also indicated she was unable to perform them without assistance.  For example, in connection with cooking, the plaintiff stated that her husband had "to lift the pans into the bowls."  [R 88]  She stated that she "cannot clean the tub, no vacuum at all– have to have someone help me with the laundry–someone

---

[5]  The notation by Dr. Goodman on February 27, 2004, that the plaintiff's employer was concerned about her possibly being injured at work, the mention of short-term disability at work, and the prospect of an FCE strongly suggest the plaintiff's medical treatment was provided in connection with her employment.

else takes out the trash." [R 88]  In connection with shopping, the plaintiff stated she had to take frequent breaks and had to either "use a cane or use one of the chairs from the store." [R 89]  She also stated she was unable to lift the groceries out of the buggy or car. [R 90]  Therefore, the very form relied on by the ALJ does not support her finding. Additionally, at the hearing, the plaintiff testified that her daughter helped her clean and helped her to dress at times "because I can't lift my legs up enough to put my clothes on." [R 220]  She testified that she could not lift the laundry.  [R 220]  She testified that her husband does most of the cooking and helps with the household chores.  [R 221]

From the above it is clear the reasons recited by the ALJ for refusing to credit the plaintiff's testimony are neither reasonable nor supported by substantial evidence.  Therefore, under the Eleventh Circuit pain standard the plaintiff's testimony must be accepted as true.

At the hearing, the plaintiff rated her pain on a typical day as being an eight out of ten.  [R 221]  However, the plaintiff's attorney was not permitted to ask the vocational expert ("VE") about the vocational impact of pain at a level of eight out of ten:

ALJ:        Ms. Horner [plaintiff's attorney], I'm not going to let you ask a question when you're talking about a subjective complaint. You're going to have to quantify your question with vocational limitations on what she can and cannot do.  How it impacts her ability to concentrate and so forth.  He's not a medical expert.

ATTY:       Okay.

ALJ:      He's not here to respond to the pain question.[6]

[R 224-25]  In this circuit, it has been recognized that expert vocational testimony is essential in cases involving pain.  Foote, at 1559 (presence of a non-exertional impairments such as pain prevent exclusive reliance on the grids and in such cases "the [Commissioner] must seek expert vocational testimony.").  While the ALJ's approach might be acceptable, the court takes judicial notice of the fact that in scores of cases coming before the court on appeal, the VE has been allowed to testify as to the vocational impact of pain rated on a scale of one-to-ten.  The court can recall no case in which the Commissioner objected to such testimony on appeal to this court.  Additionally, the court takes judicial notice that vocational experts universally testify that pain at a level of eight out of ten prevents gainful employment.

      Nonetheless, in an attempt to comply with the ALJ's requirements, the plaintiff's attorney asked the VE about the impact of the plaintiff's testimony that she could only stand for 10 to 15 minutes, sit for 15 to 30 minutes, walk less than a block and lift approximately 10 pounds.  [R 217-218]  The VE responded that the "frequency of changing positions would preclude sustaining work posture for an eight hour day."  [R

---

[6]  The court notes that the ALJ did not object to the plaintiff being asked to rate her pain on a scale of one-to-ten, even though the ALJ presumably knew she would not allow the VE to consider such a rating.  It was incumbent upon the ALJ to elicit testimony about the plaintiff's pain in a manner that would allow meaningful questions to be posed to the VE.  "Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record.  This obligation exists even if the claimant is represented by counsel, or has waived the right to representation."  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)(citations omitted).

225]  Therefore, based upon the plaintiff's testimony about her pain and other subjective symptoms, which must be accepted as true, the plaintiff is disabled.  This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  <u>Davis v. Shalala</u>, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  <u>Id.</u>

      An appropriate order will be entered contemporaneously herewith.

      DONE and ORDERED 21 April 2008.

                                            UNITED STATES DISTRICT JUDGE
                                            J. FOY GUIN, JR.